UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

Case No. 3:25-cr-2M-WWB-LLL
18 U.S.C. § 371

KEIRSHA TREINA SMITH

### INFORMATION

The United States Attorney charges:

### COUNT ONE

#### A.   Introduction

At all times material to this Information:

1.      Medicare was a federally funded health care benefit program that provided medical coverage for persons age 65 and over and for persons under age 65 who were disabled.

2.      Medicare was a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f).

3.      Medicare was divided into four parts: A, B, C, and D.   Part B provided supplementary medical insurance benefits that covered certain doctors' services, outpatient care, preventive services, and medical supplies.

4.      Each Medicare beneficiary was identified with a unique beneficiary identifier number ("BIN").   These BINs were used, among other things, to

determine a beneficiary's eligibility for Medicare benefits, and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services.   Two types of BINs established under Title 42, United States Code, Chapter 7, subsection XVIII, were Health Insurance Claim Numbers ("HICNs") and Medicare Beneficiary Identifiers ("MBIs").

5.    HICNs were typically comprised of the beneficiary's social security number and often included one or more additional letters.   In 2015, Congress passed the Medicare Access and CHIP Reauthorization Act ("MACRA"), which mandated the phase-out of the use of social security numbers in the assignment of BINs.

6.    From April 4, 2022, until the declared end of the COVID-19 public health emergency on May 11, 2023, Medicare covered and paid for OTC ("over the counter," i.e., not prescribed or ordered by a physician) rapid antigen COVID-19 tests for beneficiaries with Medicare Part B, at no cost to the beneficiaries. However, Medicare regulations provided that Medicare would pay for such tests only if a beneficiary requested the tests.

7.    The defendant, KEIRSHA TREINA SMITH, was an owner and operator of Minute Lab LLC, which was incorporated on or about November 8, 2021, and which had its principal place of business in Pembroke Pines, Florida.

B.    Charge

Beginning in or about February 2023 and continuing through in or about June 2023, in the Middle District of Florida, and elsewhere, the defendant,

2

KEIRSHA TREINA SMITH,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is:

(1)    to knowingly and willfully pay and offer to pay remuneration, by kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), and

(2)    without lawful authority, to knowingly and willfully, purchase, sell, distribute, and arrange for the purchase, sale, and distribution of beneficiary identification numbers under Title 42, United States Code, Chapter 7, subsection XVIII, that is, HICNs and MBI numbers, in violation of 42 U.S.C. § 1320a-7b(b)(4).

C.    Manner and Means

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

1.      The defendant enrolled Minute Lab with Medicare as a participating provider that would provide clinical laboratory services to Medicare beneficiaries under Part B.

2.      The defendant entered into an agreement with another company pursuant to which the company provided lists of identifying information for Medicare beneficiaries, including their Medicare numbers, for the purpose of Minute Lab providing COVID-19 tests to the beneficiaries and billing Medicare for the tests.

3.      The defendant paid the company a set dollar amount per beneficiary but was required to pay this amount only if a claim submitted on behalf of the beneficiary was paid by Medicare.

4.      The defendant engaged a shipper, and caused it to be engaged, to send COVID-19 tests to the Medicare beneficiaries whose identifying information had been provided to Minute Lab by the company.

5.      The Medicare beneficiaries to whom Minute Lab sent the COVID-19 tests had not requested the tests.

6.      The defendant engaged a billing company, and caused it to be engaged, to submit claims to Medicare for the COVID-19 tests that were shipped to the beneficiaries.

7.      From the reimbursement amounts paid to Minute Lab by Medicare, the defendant paid the company that provided the beneficiary information in accordance

4

with their agreement, that is, she paid a set amount for each beneficiary for whom Minute Lab was reimbursed by Medicare.

8.      For the period of February 2023 through June 2023, the defendant submitted and caused to be submitted approximately 6,466 false and fraudulent claims to Medicare on behalf of Minute Lab and received reimbursements from Medicare for that period totaling approximately $569,701.

### D.   Overt Acts

In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida and elsewhere:

1.      In or about April 2023, the defendant submitted and caused to be submitted, on behalf of Minute Lab, a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials B.R. who resided in St. Augustine, Florida, for a total billed amount of approximately $96, for which Medicare reimbursed Minute Lab a total of approximately $94.

2.      In or about April 2023, the defendant submitted and caused to be submitted, on behalf of Minute Lab, a claim to Medicare for the provision of eight rapid antigen COVID-19 tests to a Medicare beneficiary with the initials S.R. who resided in St. Augustine, Florida, for a total billed amount of approximately $96, for which Medicare reimbursed Minute Lab a total of approximately $94.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.      The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2.      Upon conviction of a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2) and/or 42 U.S.C. § 1320a-7b(b)(4), in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture for approximately $569,701, which represents the proceeds the defendant personally obtained from the offense.

4.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without difficulty,

6

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

GREGORY W. KEHOE
United States Attorney

By: _____
ARNOLD B. CORSMEIER
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division